UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

_____
DIANNE DULONG                                  )
                          Plaintiff,           )
                                               )
vs.                                            )  C.A. No. 1:04-cv-12552
                                               )
JOHN E. POTTER, POSTMASTER GENERAL,            )
                          Defendant.           )
_____

## <u>MEMORANDUM IN OPPOSITION TO<br>DEFENDANT'S MOTION TO DISMISS</u>

## <u>INTRODUCTION</u>

The Plaintiff has the right to have her EEOC Complaint heard in the Federal

Court.  She complied with all the necessary time standards and filed her Complaint in

Federal Court to have the EEOC Complaint heard within the time period allowed for said

filing.

While her initial complaint incorporated the original EEOC filing, it attempted to

bring further action under Federal Code 42 U.S.C. 1981 and 42 U.S.C. 1983, which the

Plaintiff concedes are not available to her based upon Defendant's argument in his

Motion to Dismiss.  In response to Defendant's objection to the counts raised in his

Motion to Dismiss, Plaintiff has responded by filing an Amended Verified Complaint,

which deletes all items raised by the Defendant as objectionable.

As a response to the Defendants' Motion to Dismiss, the Plaintiff herein has filed

an Amended Verified Complaint clarifying the causes of action and her intent to transfer

her EEOC Complaint to the Federal Court for hearing.  In addition, the Plaintiff clarifies

her original complaint by adding defendants and claims of a contract nature and in

1

violation of her civil rights as protected by the 14th Amendment of the United States

Constitution, as well as the right to have her EEOC Complaint heard by the Federal

District Court, her claims under Title VII of the Civil Rights Act of 1964.

While the Plaintiff agrees that Federal Statutes 42 U.S.C. §1981 and 42 U.S.C.

§1983 are not available to her since said statutes are for the purpose of allowing suit

action against a state actor, the Plaintiff may still avail herself of her right under the 14th

Amendment.  The standard for dismissal of Plaintiff's Count for 14th Amendment

violations by the postal service would be the same standard applied to 42 U.S.C. §1981

and 1983 actions in an action against a Federal agency such as the U. S. Postal Service.

Said case law precedents would also relate to her EEOC claims.

## STATEMENT OF FACTS

1.      The Plaintiff first became employed with the Post Office on April 25, 1987 at the

Buzzards Bay Post Office, Meetinghouse Lane, Buzzards Bay MA from 4/25/87 to

10/92.  Thereafter it became the Cape Cod Processing & Distribution. In October of 2000

the facility moved to 25 Tobey Road, Wareham MA  02571.

2.      The Plaintiff became the Clerk/Steno in October of 1989.  At that time Plaintiff's

supervisor was Cyril P. Dumas who now works in Providence.

3.      In February 1993, Joseph Ferreira became the Plant Manager and Direct Report

Supervisor to whom the Plaintiff reported.

4.      From the outset, Ferreira treated the Plaintiff in a prejudicial and disdainful

manner; especially after she filed her first complaint with the EEOC on September 11,

2000.

5.   The Plaintiff was awarded a position that required training.  In the presence of a supervisor, Ferreira denied the Plaintiff the training, which was a contractual guarantee.

6.   Ferreira did not communicate with the Plaintiff regarding work issues necessary for her to do her job.

7.   Ferreira badgered the Plaintiff about security duties with respect to the gate monitor (post 9/11).  In addition, Ferreira also threatened to give the Plaintiff more work.

8.   On November 28, 2001, Ferreira charged the Plaintiff as being absent without leave when she was not.

9.   Beginning October and November 2001, Ferreira forced the Plaintiff to work in a hostile work area.

10.   Ferreira made disparaging remarks about the Plaintiff's work.

11.   Ferreira during a request for accommodations meeting said to the Plaintiff "You don't want to work at 4:00 AM".  In addition, Ferreira met with the Plaintiff's steward privately and the Plaintiff had no knowledge of said meeting until she was called in.

12.   Ferreira gave privileges to Ms. Patricia E. Monroe, Distribution Clerk (formerly Timekeeper) and denied same to the Plaintiff.  Ms. Monroe always had preferential treatment, which became more pronounced after the Plaintiff filed her grievance in January, 2003.

13.   Ferreira did not give the Plaintiff the same consideration for annual leave and change of schedules that he did for others.

14.   Ferreira acted in an intimidating fashion towards the Plaintiff on a constant basis in an effort to establish an uncomfortable and stressful atmosphere at her place of employment.

15.     Ferreira deliberately reduced the Plaintiff's workload with the intent of removing her from the position as a response to the Plaintiff's efforts to seek fair and equitable treatment. This was accomplished by distributing her work to others and doing some of it himself.

16.     Ferreira begrudgingly gave meager acknowledgment of jobs well done by the Plaintiff.  At the same time, Ferreira approved generous monetary awards and glowing letters of recognition to people for minor accomplishments like showing up for work. Mostly male employees received these awards.

17.     Ferreira told the Plaintiff her work was not as important as Ms. Monroe's.

18.     Ferreira harassed the Plaintiff about breaks and lunchtimes and went so far as to wait for the Plaintiff at her desk and/or calling the Plaintiff on the phone at exactly the moment she was due to return, a treatment to which no other similarly situated employee was subjected.

19.     Ferreira insisted the Plaintiff receive computer training from Providence Personnel (on two different occasions) and then interrupted said training.

20.     Ferreira removed the Plaintiff from her job based on the pretext of a need for more help on the workroom floor, despite the fact that the available resources were not being utilized.

21.     Ferreira deliberately posted the new administrator position without qualifications to ensure the Plaintiff would not regain the position. Typing skills were necessary for her position, but Ferreira deleted such requirements to avoid having to give the position to the Plaintiff.

22.    Aaron Tobey, JR., President of the APWU, Local 6005 (hereinafter "Tobey") was aware of the situation that existed in the administrative area and allowed the hostile environment created by Ferreira to continue.

23.    Tobey was aware that Ferreira attempted to force the Plaintiff to perform a function that the Plaintiff did not feel safe performing (monitoring duties-post 9/11), which was basically acting as a security guard for which the Plaintiff had received no training.

24.    On November 28, 2001, Tobey was aware that Ferreira badgered the Plaintiff enough to reduce her to tears and forcing her to leave the building.

25.    In addition, Tobey and Ferreira were aware that the Plaintiff suffered from the following physical problems:  osteoporosis, chronic fatigue syndrome, arthritis, fibromyalgia, stress and anxiety.

26.    As a result of Ferreira's influence, the Reasonable Accommodation Committee (RAC) treated the Plaintiff differently by refusing her requests for reasonable accommodations.  Other employees had been accommodated by RAC and/or Ferreira.

27.    As a result of Ferreira's behavior toward the Plaintiff, the Plaintiff has filed the following Grievances with her Union:

    a.    Grievance:  01-136-Monitor Duties – Date of Step 1:  11/27/01.  The Complainant was forced to act as the security guard for the building (post 9/11).  The monitor was removed, Ferreira angry over the matter and badgered the Plaintiff.
    b.    Grievance:  01-156-AWOL Charge – Date of Step 1:  12/01/01.  Ferreira's badgering of the Plaintiff caused her to leave the building and the Plaintiff was charged AWOL.
    c.    Grievance:  02-44-Management doing Plaintiff's work – Date of Step 1: 9/25/02.  A member of management was opening and distributing mail before the Plaintiff's arrival, taking work away from her.
    d.    Grievance:  03-02-Disparate Treatment – Date of Step 1: 01/14/03.  P. Monroe made her own schedule.  The Plaintiff was not allowed to do the same.  Ferreira went so far as to backdate Monroe's forms to make them appear as if they were submitted on time.  Monroe was allowed games on

5

her computer for entertainment, the Plaintiff was not. Monroe was allowed to use the time clock in her office; the Plaintiff was required to go to the floor. Monroe appeared to have two time cards. Monroe was allowed to block access to the Plaintiff's files, located behind her office. Ferreira tried to force the Plaintiff to enter this area despite her telling him she did not feel safe. Documented that Monroe has a volatile temper.

e.    Grievance:  03-19 – Management doing Plaintiff's work-Date of Step 1: 06/05/03. Ferreira began doing typing previously done by Plaintiff; Ferreira had others do typing previously done by Plaintiff; Ferreira began transporting work to the Plaintiff's desk rather than allowing Plaintiff to retrieve it from his desk as previously done; Ferreira was made aware that a member of management was emptying the daily mail pouch before the Plaintiff arrived for work. This was her job. Ferreira contacted Providence regarding casual hiring. This was previously done by Plaintiff as part of her job. Ferreira telephoned casuals himself with reporting time information, which previously had been done by the Plaintiff as part of her job.

f.    Grievance:  03-23-Denied Reasonable Accommodations-Date of Step 1: 07/24/03. Ferreira and Sawyer met before the Plaintiff was called into Ferreira's office to discuss Plaintiff's accommodation request. Ferreira rushed the Plaintiff through the process, completing the form in a sloppy, haphazard, dismissive manner. Ferreira told the Plaintiff, "She did not want to work at 4:00 a.m." Ferreira questioned the Plaintiff's bid choices. Ferreira's input influenced the RAC committee's decision to deny the Plaintiff accommodation.

28.    As a result of the Defendant's behavior toward the Plaintiff, the Plaintiff has filed

the following Complaints with the EEOC:

a.    EEO Complaint: 1B0290001-01- training denied - filed 9/11/00. The Plaintiff was awarded a position that required training. In the presence of a supervisor, Ferreira denied the Plaintiff the training, which was a contractual guarantee.

b.    EEO Complaint: 1B0290004-02 – charged AWOL – filed 11/28/01. Ferreira harassed the Plaintiff over the gate monitoring duties to the point where she left the building in tears. Despite the fact that the Plaintiff submitted a leave slip to Matthew Smolinsky, a 204B (acting supervisor with authority of a real supervisor), Ferreira chose to charge the Plaintiff AWOL instead of another form of approved leave.

c.    EEO Complaint:  1B0290039-03 - Job Loss – filed 5/8/03. Ferreira dried up the Plaintiff's work with the intent of abolishing her position. At no time was there any discussion about reduction in workload. Ferreira, with the help of Tobey removed the Plaintiff from the administration area. Tobey did nothing to correct the hostile environment created by Ferreira.

29.    On May 12, 2003, DuLong filed a discrimination claim against the United States Postal Service with the New York District Office of the Equal Employment Opportunity Commission ("EEOC").  (A copy is enclosed herewith and marked Exhibit A).

30.    On September 7, 2004 DuLong requested a Notice of Right to Sue pursuant to 29. C.F.R. § 1601.28 (d), (1), (2), (e), (4) against the United States Postal Service under Title VII of the Civil Rights Act of 1964 ("Title VII").  (A copy is enclosed herewith and marked Exhibit B).

31.    On September 7, 2004, Kevin J. Berry, Administrative Judge entered a Dismissal Order allowing DuLong to file private suit in the Federal District Court.   (A copy is enclosed herewith and marked Exhibit C).

32.    Said Verified Complaint was filed within 90 days of the Dismissal Order.

33.    At all times relevant hereto, while DuLong was an employee of the United States Postal Service, DuLong was subjected to age and sex discrimination by her direct supervisor Joseph Ferreira.

34.    As a result of this discrimination inflicted upon DuLong, DuLong suffered emotional damages for which the United States Postal Service is liable under Title VII.

35.    While being employed, the Plaintiff filed numerous complaints in the form of grievances under the collective bargaining agreement.

 36.    While employed, the Plaintiff complained on numerous occasions about working conditions including but not limited to those referred to herein.

37.    While employed, the Plaintiff filed charges with the Equal Employment Opportunity Commission

38.    Defendants have by the conduct cited herein unlawfully retaliated against the Plaintiff because of each instance where she engaged in protected activity by filing each

grievance, complaining about working conditions, and the filing of charges with the

Equal Employment Opportunity Commission.

39.     In each instance Defendants' have engaged in conduct that violates public policy

and in the stances where Defendants have practiced reprisals against Plaintiff for filing

charges with the Equal Employment Opportunity Commission they have done so in

violation of 42 U.S.C.2000e-(16).

**ARGUMENT**

I.     **DEFENDANTS' MOTION TO DISMISS PLAINTIFF,**
       **DULONG'S EQUAL PROTECTION CLAIMS UNDER THE 14TH**
       **AMENDMENT SHOULD BE DENIED.**

       A.     **DuLong Stated an Equal Protection Violation and Enough**
              **Evidence for a Jury to Decide the Claim.**

       In Moran v. Bench, 353 F.2d 193 (1st Cir., *cert denied*, 384 U.S. 906

(1965), a motorist brought a § 1983 claim against a Massachusetts Registry of Motor

Vehicles employee for suspending and not reinstating her driver's license.  The First

Circuit affirmed summary judgment against the plaintiff, but explained how a federal

claim could be stated:

> [I]f defendants employed their official powers *for the purpose of injuring the*
> *plaintiff*, rather than to serve the proper ends of their governmental duties,
> plaintiff might well have a claim under the civil rights statute.

Id. at 194 (emphasis added), citing Yick Wo v. Hopkins, 118 U.S. 356 (1886), and People

v. Walker, 200 N.E.2d 779 (N.Y. 1964).

       In LeClair v. Saunders, 627 F.2d 606 (2nd Cir. 1980), the LeClair's (Vermont

dairy farm owners) sued Saunders (a Commonwealth of Massachusetts dairy farm

inspector) under § 1983.  They alleged that he violated their equal protection rights by

selectively enforcing Massachusetts dairy regulations against them on milk that they

shipped into Massachusetts. Citing <u>Moran</u>, the Second Circuit announced the following

test for equal protection selective enforcement claims under § 1983:

> "[W]e believe that liability in the instant type of equal protection
> case should depend on proof that (1) the person, compared with others
> similarly situated, was selectively treated; and (2) that such selective
> treatment was based on impermissible considerations such as race,
> religion, intent to inhibit or punish the exercise of constitutional rights, or
> malicious or bad faith intent to injure a person."

<u>Id</u>. at 610 (footnote omitted).

In reversing a jury verdict for the <u>LeClairs</u>, the Court noted that they would have

prevailed on appeal if they had shown that Saunders' was <u>*out to get*</u> Mr. LeClair:

> In this case, where no invidious discrimination or interference with
> the exercise of other express constitutional rights has occurred, the
> malice/bad faith standard should be scrupulously met. If Saunders went
> after Mr. LeClair to <u>*get him*</u> for any reason, then he should be liable. But
> we do not believe the evidence in this case can support such a conclusion.

<u>Id</u>. (emphasis added).

In <u>Rubinovitz v. Rogato</u>, 60 F.2d 906 (1st Cir. 1995), landowners sued various

City of Lynn officials under § 1983 for revoking zoning variances and selective

enforcement of building code provisions. The District Court granted summary judgment,

but on appeal the First Circuit ruled that the landowners could pursue their equal

protection claims against the city purchasing director (Rogato) and the city gas inspector

(Baron). The First Circuit endorsed the <u>Yerardi/LeClair</u> test, and stated that "a

reasonable jury might well be able to conclude that there was an orchestrated conspiracy

involving a number of officials, <u>selective enforcement, malice</u>, and substantial harm." <u>Id</u>.

at 912. Evidence of malice was that Rogato was friends with a tenant that plaintiffs had

evicted; that Rogato was "personally hostile" to the plaintiffs and had spoken to other city

officials about them; and that Baron had told others that the plaintiffs were "bad people" and that one of them was a "bitch."  Id.

Rubinovitz, at page 912, cited Esmail v. Macrane, 53 F.23d 176 (7th Cir. 1995), in which the Seventh Circuit held that a person seeking to renew his liquor license stated an equal protection claim under § 1983 by alleging that denial of his license was "the result solely of a vindictive campaign by the mayor" against him.  Id. at 179.  The Court noted that the suit was "not barred by the 'class of one' rule, because there is no such rule."  Id. at 180.  Accordingly, "if the power of government is brought to bear on a harmless individual merely because a powerful state or local official harbors a malignant animosity toward him, the individual ought to have a remedy in federal court."  Id. at 179.  Thus, the plaintiff could proceed under the equal protection clause to prove that the mayor had engaged in a "spiteful effort to 'get' him…"  Id. at 180.

In Bass v. City of Albany, 968 F.2d 1067 (11th Cir. 1992) a former policeman filed suit under § 1983 against the City of Albany (Georgia), the Albany police chief, and the city manager, alleging that he had been wrongfully terminated from his job.  The Eleventh Circuit reversed summary judgment against Bass on his due process claim, but affirmed summary judgment on his disparate treatment equal protection claim.  The Court, however, noted that a termination for improper motives would state an equal protection claim:

> "As with selective prosecution in criminal cases, Bass' termination would violate the equal protection clause of the Fourteenth Amendment if it were based on improper motives.  United States v. Lichenstein, 610 F.2d 1272 (5th Cir.), *cert. Denied*, 447 U.S. 907 (1980).  Bass, however, cannot show that the City's termination of him was selective, invidious, in bad faith or based on impermissible considerations such as race, religion, or his exercise of constitutional rights".

Id. at 1070.

However, in the present case the Plaintiff can show that her treatment, and intentional actions by the Defendants to damage her reputation, was in bad faith, selective, invidious, and based upon impermissible considerations, her sex, age and a malicious intent to do her harm and force her out of the work place.

In denying defendants' motion to dismiss the equal protection claim, Judge Tauro relied on <u>Yaradi's</u> and <u>Rubinovitz</u>:

> Plaintiff's Equal Protection claim is saved…by evidence that his selective treatment was motivated by 'bad faith or malicious intent to injure.'  <u>Yarardi's</u> 932 F.2d at 94….The actions taken…against Mr. Columbus… 'give enough indication of a malicious orchestrated campaign' [against him to survive a Rule 12(b)(6) motion].  <u>Rubinovitz</u>, 60 F.3d at 912.

<u>Id</u>. at 52.

There is ample evidence already present from which a reasonable jury could infer the Defendant acted with malice.  The Plaintiff's claims can be strengthened through discovery, which will give Plaintiff opportunity to depose witnesses to past discrimination against women, as well as against the Plaintiff, and the malicious nature of the treatment by the Defendants of her.

To the extent that Plaintiff has to prove she was treated differently than comparable employees, the Court has not mandated a certain quantity of comparative evidence.  In <u>Vanderhust</u> and <u>Columbus</u>, there was evidence that the plaintiffs were treated differently than two other employees and one other employee, respectively.  There is no magic number. This is what we have a jury for; and with discovery the Plaintiff will be able to provide even more evidence.

The standard for dismissal of an action was clearly set forth in <u>William R. McGrath v. Joseph G. McDonald and the City of Boston</u>, 853 F.Supp. 1, 1994, U.S. District Court of Mass.

In allowing a claim based upon violation of Plaintiff's rights under 42 U.S.C. § 1983 and denying a Rule 12b(6) Motion for Dismissal, the Court stated:

> On a motion to dismiss pursuant to Rule 12(b)(6), 'the Court must view the facts presented in the pleadings and all reasonable inferences to be drawn there from in the light most favorable to the non-moving part.' Hathaway v. Stone, 687 F.Supp. 708,710 (D.Mass. 1988). A court should not dismiss a complaint 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim, which would entitle him to relief.' Kadar Corp. v. Milbury, 549 F.2d 230, 233 (1st Cir. 1977); see Scheuer v. Rhodes, 416 U.S. 232, 236, 40 L.Ed. 90, 94 S. Ct. 1683 (1974) (on motion to dismiss, issue is not whether plaintiff will prevail, but whether, construing complaint liberally, plaintiff should be entitled to offer evidence in support of his claims). While the complaint need only set forth a 'generalized statement of facts,' the plaintiffs must provide enough information 'to outline the elements of the pleaders' claim.' Kadar Corp., 549 F.2d at 233.

On a motion to dismiss, civil rights claims are subject only to normal standards of pleading. Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 122 L. Ed. 2d 517, U.S., 113 S. Ct. 1160 (1993). The correct standard for assessing the sufficiency of the instant complaint, therefore, is whether, accepting the factual allegations in the complaint as true and construing them in the light most favorable to plaintiff, the complaint shows any set of facts, which could entitle plaintiff to relief. Gooley v. Mobil Oil Corp., 851 F.2d 513, 514 (1st Cir. 1988).

The Court in McGrath v. MacDonald, et al, supra, further clarified the standard to be applied in civil rights cases by stating:

> In Leatherman, however, the Court specifically held that a federal court may [not] apply a 'heightened pleading standard'—more stringent than the usual pleading requirements of Rule 8(a) of the Federal Rules of Civil Procedure –in civil rights cases alleging municipal liability under [section 1983]. Leatherman, 113 S. Ct. at 1161. The Court stated that, instead of relying on motions to dismiss to dispose of unmeritorious municipal liability claims, 'federal courts and litigants must rely on summary judgment and control of discovery to weed out unmeritorious claims sooner rather than later.' Id. at 1163. The Justices specifically overruled case law requiring 'a plaintiff to do more than plead a single

instance of misconduct' to survive a motion to dismiss in a municipal liability case.  Id. at 1162-63.

While the case law cited herein deals with suits that involve Federal Statutes in actions brought against State agencies, the same rulings would apply in Plaintiff's case to have her claims of 14th Amendment violations heard as part of her EEOC Complaint transfer to Federal Court to pursue her Title VII claims under the Civil Rights Act of 1964.  The claims are all interrelated and inseparable.  Therefore a Motion to Dismiss is premature.  Discovery should be allowed at which Plaintiff will be able to further substantiate her claims.


## COUNTS IV, V, VIII & IX STATE BREACH OF CONTRACT CLAIMS

Dulong has a bundle of employment rights under her employment contract, under the common law, under state and federal statutes, under the state and federal constitutions, and under the Collective Bargaining Agreement (hereinafter "CBA"), for a CBA is a written agreement between a union and a company – "and the … members of that … union … [are] entitled to the benefits of that written agreement."  Bakery & Confect. Workers v. Hall Baking Co., 320 Mass. 286, 289 (1946).  Accord, United Protective Workers of America v. Ford Motor Company, 194 F.2d 997, 1001 (7th Cir. 1952) (Illinois law recognizes the "right of a member of a union who has been injured by a breach  by his employer of the collective bargaining agreement to sue to recover damages"); MacKay v. Loew's Inc., 182 F.2d 170, 172 (9th Cir. 1950) (under California law, employee, "in addition to having rights under his individual contract of employment, may sue directly on the collective bargaining contract as a third party beneficiary to enforce the provisions in the contract which have been made for his benefit").

13

In Balsavich v. Local 170, International Brotherhood of Teamsters, 371 Mass. 283 (1974), employees sued their employer for violating a seniority provision of their CBA. The employees' amended complaint was dismissed on a Rule 12(b)(6) motion, but the Supreme Judicial Court reversed. The Court ruled that the employees had alleged "broadly and vaguely a breach of contract by the employer." Id. at 285. Thus, even if DuLong's contract claims are viewed as claims which she "struggle[s] to assert," id. at 284, and is considered "a quite unsatisfactory pleading, id. at 287, it asserts "a recognizable legal theory … and can be said to state a claim." Id.

Massachusetts does not limit union employees to their collective bargaining agreement on the issue of discrimination, but rather have determined that they have an independent source of rights founded in the discrimination statues of the Commonwealth. City of Boston v. MCAD, 39 Mass. App. Ct. 234, 238 (1995); School Comm. of Brockton v. MCAD, 377 Mass. 392, 399 (1979). See Blanchette v. School Committee of Westwood, 427 Mass. 176, 183 (1998) (Union cannot bargain away individual's statutory discrimination rights).

As a result, they have found that the state statutes are not preempted by federal law. Mass. Electric Co. v. MCAD, 375 Mass. 160, 173 (1978).

"Federal courts in the First Circuit have permitted state law discrimination claims to survive" preemption challenges under §301 of the Labor Management Relations Act. Moriearty, Adkins, Rubin & Jackson, 45 Mass. Practice Series "Employment Law" §1.13 (2002 Supp. at 26). E.g., Ralph v. Lucent Technologies, Inc., 135 F.3d 166, 171 (1st Cir. 1998), Rocheleau v. Brockway-Smith Co., 1999 WL 172813 (d. Mass).

When a claim turns on factual questions about an employer's conduct and motives, preemption is not appropriate. Id. At 261. Here, the claims of discrimination

under state law involve just such an inquiry. E.g., LaRosa v. United Parcel Service, Inc., supra, 23 F. Supp.2d at 147-48 (age discrimination analysis requires a factual inquiry which takes it outside the collective bargaining agreement; preemption therefore inappropriate). Further, the Court in Hawaiian Airlines, Inc. v. Norris, 512 U.S. 246, 252 (1994), determined that state law rights which exist "independent of" the collective bargaining agreement are not preempted. 512 U.S. at 260. The Court reiterated that "even if dispute resolution pursuant to a collective bargaining agreement, on the one hand, and state law, on the other would require addressing precisely the same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement of §301 preemption purposes." Id. at 262.

In fact, however, in applying the case law even "reference" to the provisions of the CBA does not require preemption; it is only when the Court would have to interpret the provisions. Plaintiff is not asking for interpretation she is asking for fairness. The Breach of Contract by the United States Postal Service was discriminating against her by the act of terminating the Plaintiff for something not covered by the CBA and activities that are totally unrelated or governed by the CBA.

The Plaintiff's contract counts of her Amended Verified Complaint are essentially a complaint in equity. As set forth in the Court decisions referenced above, the plaintiff contends that it is the factual conduct of the Defendants that is at issue not the terms of his employment contract. Like the cases involving state statutory rights and constitutional rights which the court as set forth aforesaid, cannot be preempted by the federal statutes governing the interpretation of collective bargaining agreements, Plaintiff contends that her equitable rights are akin to statutory rights and are grounded in long standing equity standards as pertains to some one in a contractual relationship.

15

The Plaintiff pleads the fact that she is under written contract only for the sake of distinguishing herself from a mere employee at will.  As set forth above she has independent individual contractual rights that do not require interpretation of the collective bargaining agreement.  In addition the contract under Article 2, Section One prohibits discrimination (attached hereto as Exhibit D).

Although the Plaintiff agrees with the Defendant Postmaster, that 42 USC 1981 & 1983 do not apply to a Federal Government Agency, the standard used to establish a discriminatory claim would be the same for a violation of the Plaintiff's rights to equal protection guaranteed by the 14th Amendment to the United States Constitution as well as to the charges she has alleged in her EEOC Complaint, which she has transferred to the Federal Court pursuant to Federal Regulations for hearing of said EEOC charges.

**Therefore, while the Plaintiff in amending her Complaint has removed all the objections raised by the Defendant in Defendant's Motion to Dismiss, the Plaintiff incorporates by reference the Amended Verified Complaint filed contemporaneously herewith and made a part hereof, clarifying and emphasizing her claims in opposition to Defendant's Motion to Dismiss.**

The claims set forth in the Amended Complaint deal significantly with the actions of the two new Defendants, who acted intentionally and maliciously and by such conduct removes them from any cloak of immunity.

Further the Amended Complaint is more definitive in expressing Plaintiff's intention to transfer her EEOC Complaint to the Federal Court and in her retaliation and contract related counts, Plaintiff clearly defines the actions, of

which the Plaintiff seeks review by this Court, all of which contributed to the

discriminatory treatment, she endured.

     Therefore, the Plaintiff respectfully submits that the Defendants' Motion to

Dismiss Plaintiff's Complaint be denied and she be allowed to conduct discovery based

upon her Amended Verified Complain filed herewith, under separate cover.

                              Respectfully submitted,
                              DianeDuLong
                              By her Attorneys


                              /s/ Joseph R. Gallitano
                              Joseph R. Gallitano, Esq.
                              BBO # 183700
                              34 Main Street Ext. Suite 202
                              Plymouth, MA  02360
                              (508) 746-1500


                              /s/ Richard D. Armstrong, Jr.
                              Richard D. Armstrong, Jr., Esq.
                              BBO # 021580
                              1400 Hancock Street
                              3rd Floor
                              Quincy, MA  02169
                              (617) 471-4400

Dated:  July 15, 2005

17

# EXHIBIT A

**UNITED STATES POSTAL SERVICE®**

# EEO Complaint of Discrimination in the Postal Service
*(See Instructions and Privacy Act Statement on Reverse)*

| 1. Name<br>DIANNE E. DULONG | 2. SSN<br>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 | 3. Case No.<br>1B-029-0039-03 |
|---|---|---|

| 4a. Mailing Address – Street or PO Box<br>9 Wareham Road | 4b. City State & Zip +4<br>Plymouth MA 02360-3234 |
|---|---|

| 5. Email Address*<br>none | 6. Home Phone<br>(508) 224-6980 | 7. Work Phone<br>(508) 291-8705 |
|---|---|---|

| 8. Position Title *(USPS Employees Only)*<br>Clk/Steno (until 5/3/03) | 9. Grade Level *(USPS Employees Only)*<br>5 | 10. Do you have Veteran's Preference Eligibility?<br>☐ Yes  ☒ No |
|---|---|---|

| 11. Installation Where You Believe the Discrimination Occurred<br>*(Identify Installation, City, State, and Zip+4)*<br>CCP&D<br>25 Tobey Road<br>Wareham MA 02571-9701 | 12. Name and Title of Person(s) Who Took the Action(s) You Allege was Discriminatory<br>Joseph M. Ferreira<br>Plant Manager |
|---|---|

RECEIVED
MAY 13 2003
EEO OFFICE USPS
PROVIDENCE RI 02904

| 13a. Name of Your Designated Representative<br>NA at present time | 13b. Title |
|---|---|

| 13c. Mailing Address *(Street or P.O .Box)* | 13d. City, State and Zip +4 |
|---|---|

| 13e. Email Address* | 13f. Home Phone<br>( ) | 13g. Work Phone<br>( ) |
|---|---|---|

| 14. Type of Discrimination You Are Alleging | | 15. Date on which alleged act(s) of Discrimination Took Place<br>04-29-03<br>*grievance #03-02 also has bearing on this clai |
|---|---|---|
| ☐ Race *(Specify):* | ☒ Sex *(Specify):*  female | |
| ☐ Color *(Specify):* | ☒ Age (40+) *(Specify):* 07-25-44 | |
| ☐ Religion *(Specify):* | ☒ Retaliation *(Specify):* 1B0290001-01 | |
| ☐ National Origin *(Specify):* | ☐ Disability *(Specify):* 1B0290004-02 | |

16. Explain the specific action(s) or situation(s) that resulted in you alleging that you believe you were discriminated against (treated differently than other employees or applicants) because of your race, color, religion, sex, age (40+), national origin, or disability. *Note that if your allegation is like or related to a previous complaint, that complaint may be amended.  29 C.F.R § 1614.106(d)*

I allege discrimination based on gender, age and retaliation in that on April 29, 2003, I was notified that my job would be reposted and effective May 3, 2003 I was deemed to be an unencumbered employee.  The points I would like to make in support of this claim are:
1. Disparate treatment in that I have been held to a different standard of performance than other clerk(s) in the front office.
2. I have been subjected to harrassment at the hands of the plant manager and the union president.
3. I believe that my job abolishment is due to previous grievance and EEO activity that was necessary.
4. I believe the plant manager has deliberately "dried up" my duties to justify his actions.
5. The plant manager has pursued this action will full knowledge of my age, health and physical limitations. (exceptions were made for the other clerk in the administrative area).  In doing so, he is aware it will be impossible for me to do the type of work and to maintain the hours as posted.  Also, I believe my position was deliberately posted without qualifications to ensure I would not/could not be a successful bidder.

17. What Remedy Are You Seeking to Resolve this Complaint?
To retain my Clerk/Stenographer position - same hours, NS days and duties

| 18. Did You Discuss Your Complaint with a *Dispute Resolution Specialist* or a *REDRESS™* mediator? | |
|---|---|
| ☒ Yes   5/8/2003<br>(Date You Received the Notice of Final Interview) | ☐ No |

| 19a. Signature of Dispute Resolution Specialist | 19b. Date<br>5/8/2003 |
|---|---|
| 20. Signature of Complainant or Complainant's Attorney | 21. Date of this Complaint<br>5/12/03 |

*Providing this information will authorize the U.S. Postal Service to send you important documents electronically.

PAGE 201

PS Form 2565, March 2001 *(page 1 of 2)*

## Privacy Act Notice

ʻrivacy Act Notice. The collection of this information is authorized by the Equal Employment Opportunity Act of 1972, 42 U.S.C. § 2000e-16; the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 633a; the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794a; and Executive Order 11478, as amended. This information will be used to adjudicate complaints of alleged discrimination and to evaluate the effectiveness of the EEO program. As a routine use, this information may be disclosed to an appropriate government agency, domestic or foreign, for law enforcement purposes; where pertinent, in a legal proceeding to which the USPS is a party or has an interest; to a government agency in order to obtain information relevant to a USPS decision concerning employment, security clearances, contracts, licenses, grants, permits or other benefits; to a government agency upon its request when relevant to its decision concerning employment, security clearances, security or suitability investigations,

contracts, licenses, grants or other benefits; to a congressional office at your request, to an expert, consultant or other person under contract with the USPS to fulfill an agency function; to the Federal Records Center for storage; to the Office of Management and Budget for review of private relief legislation; to an independent certified public accountant during an official audit of USPS finances; to an investigator, administrative judge or complaints examiner appointed by the Equal Employment Opportunity Commission for investigation of a formal EEO complaint under 29 CFR 1614; to the Merit Systems Protection Board or Office of Special Counsel for proceedings or investigations involving personnel practices and other matters within their jurisdiction; and to a labor organization as required by the National Labor Relations Act. Under the Privacy Act provision, the information requested is voluntary for the complainant, and for Postal Service employees and other witnesses.

## Instructions

A. Use this form to file a formal complaint if you are an employee or applicant for employment who believes that you have been discriminated against by the Postal Service because of your race, color, religion, sex, age (40+), national origin or disability. You must have presented the matter to an EEO dispute resolution specialist within 45 calendar days of the date the incident occurred, or, if a personnel action was involved, within 45 calendar days of the effective date of the personnel action.

B. Unless you have agreed to extend the 30-day period for an additional 60 calendar days, you will receive a notice of right to file a formal complaint within 30 calendar days from the date of your first contact with the EEO Office. You must file your formal complaint within 15 calendar days of the date on which you receive your notice of right to file. If you do not receive a notice of right to file within the appropriate time period, you may file a formal complaint at any time thereafter, up to 15 calendar days after receiving the notice.

C. If you have agreed to participate in alternative dispute resolution (ADR), the informal process must be completed within 90 calendar days of your first contact with the EEO office. You have the right to file a formal complaint at any time thereafter, up to 15 calendar days after you have received your notice of right to file.

D. Your notice of right to file contains the address where your formal complaint must be mailed or delivered. The formal complaint will be deemed timely if it is received or postmarked before the expiration of the 15-day filing period, or, in the absence of a legible postmark, if it is received by mail within 5 days of the expiration of the filing period.

E. The time limits for filing a formal complaint may be extended if you show that you were prevented by circumstances beyond your control from timely submitting the complaint, or if you present other reasons considered sufficient by the Postal Service.

F. If you need help preparing this form, you may obtain assistance from a representative of your choice. You may also seek guidance from the dispute resolution specialist who issued you the notice of right to file.

G. Your formal complaint must be in writing and must be signed and dated by you or your attorney. You are entitled to a representative of your choice at all stages of the EEO complaint process; however, only an attorney can sign official EEO documents on your behalf.

H. If your written complaint is accepted, it will be assigned to an EEO complaints investigator who will provide you with an opportunity to present all the facts that you believe resulted in the alleged discrimination. The EEO complaints investigator will conduct a thorough review of the circumstances under which the alleged discrimination occurred.

I. While your complaint is under investigation, you may amend it to add claims that are like or related. Contact the EEO office for the address where your written amendment request must be mailed or delivered.

J. You and your representative will each be provided a copy of the completed investigative file. You have the right to request a hearing within 30 calendar days of the date you receive the investigative file by mailing or delivering your request to the appropriate Equal Employment Opportunity Commission (EEOC) District Office with a copy to the area Manager, EEO Compliance & Appeals. If you are

represented by an attorney, the 30-day period will begin on the date your attorney receives a copy of the case file. Instead of requesting a hearing, you may request an agency decision without a hearing and the head of the agency or his/her designee will issue you a decision letter with appeal rights.

K. If you request a hearing, the EEOC will appoint an administrative judge (AJ) to conduct the hearing. The AJ will notify you and the Postal Service of the right to seek discovery prior to the hearing to develop evidence reasonably on matters relevant to the issues raised in the complaint(s) to be heard. Attendance at the hearing will be limited to persons the administrative judge determines have direct knowledge relating to the complaint. Hearings are part of the investigative process and are closed to the public.

L. Following the hearing, the AJ will send you copy of the hearing record, including the transcript and his/her decision. The head of the agency, or his/her designee, will review the entire record, including the transcript, and will determine whether or not to implement the AJ's decision. You will receive the agency's notification of final action within 40 days of the date the agency receives the AJ's decision. If the agency's final action will not fully implement the AJ's decision, the agency must appeal to the EEOC. A copy of the Postal Service's appeal will be attached to your notification of final action.

M. If you are not satisfied with the decision of the AJ, or the agency's final action on the decision, you have the right to appeal within 30 calendar days after receiving notification of the agency's final action. Your appeal must be mailed to the EEOC at the following address:

     EEOC
     OFFICE OF FEDERAL OPERATIONS
     PO BOX 19848
     WASHINGTON DC 20036-9848

N. In lieu of filing an appeal of the agency's final action to the EEOC's Office of Federal Operations (OFO), you may file a civil action in an appropriate U.S. District Court within 90 calendar days of your receipt of the agency's final action.

O. You may also file a civil action in an appropriate U.S. district court: after 180 days have passed from the date you filed the complaint, if the final agency action has not been issued and an appeal has not been filed; within 90 days of receipt of the OFO's decision on your appeal; or after 180 days have passed from the date you filed your appeal with the OFO, if there has been no decision issued on that appeal.

P. Special statutory provisions in Public 93-259 relate to age discrimination. The Public Law sets forth the right to by-pass the administrative complaint processing procedure and file a civil action. For additional information, contact the EEO office.

Q. Under the Equal Pay Act, you have the right to file a civil action without exhausting the administrative procedures.

R. You must keep the EEO complaint processing office aware of your current mailing address at all times. Failure to notify the EEO complaint processing office and the EEOC of an address change could result in the dismissal of your complaint.

PS Form 2565, March 2001 *(Page 2 of 2)*

PAGE 202

# EXHIBIT B

# ATTORNEY JOSEPH R. GALLITANO
## & ASSOCIATES

**34 MAIN STREET EXT., SUITE 202, PLYMOUTH, MASSACHUSETTS 02360**
**(508) 746-1500         FAX (508) 747-1150**

September 7, 2004

**Via Fax and Regular Mail**

Kevin J. Berry, Administrative Judge
US EEOC
New York District Office
33 Whitehall Street, 5th Floor
New York, NY 10004

RE:    Claimant: Dianne E. DuLong
       EEOC No. 160-2004-00218X
       Agency No. 1B-029-0039-03

Dear Judge Berry:

Pursuant to 29 C.F.R. § 1601  8(a)(1), (2) and (3)(d), the Claimant requests the
Commission to issue a notice of Right to Sue in the Federal District Court and dismiss the
within action before the EEOC.

Please forward to this office a Notice of Right to Sue pursuant to 29 C.F.R. § 1601.8(e).
Upon receipt of said notice the Claimant Dianne DuLong will file a complaint in the U.S.
District Court of Massachusetts within 90 days of receipt of aforesaid order authorizing
the Claimant to proceed in Federal District Court.

Thank you for your attention to this matter.

Very truly yours,

Joseph R. Gallitano

JRG/pjm

cc:    Attorney Karen Cote
       Dianne DuLong

# <u>EXHIBIT C</u>

**UNITED STATES OF AMERICA**
**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**NEW YORK DISTRICT OFFICE**

---

Dianne E. DuLong,
                    Complainant,


              v.

John E. Potter, Postmaster General
United States Postal Service,
                  Agency.

---

EEOC Hearing No. 160-2004-00218X
Agency File No. 1B-029-0039-03

## DISMISSAL ORDER

On September 7, 2004 the Complainant requested dismissal of the above referenced complaint before the EEOC due to her desire to file a private suit in Federal District Court. Based upon the Complainant's request and the fact that more than 180 days has passed since the filing of the administrative complaint, this complaint is hereby DISMISSED.

It is so Ordered.

For the Commission:


Kevin J. Berry
Administrative Judge

Date: 9/7/07

# EXHIBIT D

Dianne DuLong
9 Wareham Rd.
Plymouth, MA 02360-3234

# AGREEMENT

between

United States Postal Service

and

American Postal Workers Union,
AFL-CIO

## 2000–2003

Handbook EL-912

---

Article 2.3

## ARTICLE 2
## NON-DISCRIMINATION AND CIVIL RIGHTS

### Section 1. Statement of Principle

The Employer and the Union agree that there shall be no discrimination by the Employer or the Union against employees because of race, color, creed, religion, national origin, sex, age, or marital status.

In addition, consistent with the other provisions of this Agreement, there shall be no unlawful discrimination against handicapped employees, as prohibited by the Rehabilitation Act.

(see Memo, page 277)

### Section 2. Committees

There are established at the national and APWU regional/ USPS Area levels Joint Committees on Human Rights. The committees will be composed of responsible representatives of the Union and responsible management officials. The committees may develop affirmative action proposals on all matters affecting minority groups. The committees will also be advised of the plan for site selection for facilities planned for national postal mail networks and major metropolitan areas, and review availability of adequate housing and public transportation. The committees shall meet as required at mutually agreeable times.

### Section 3. Grievances

Grievances arising under this Article may be filed at Step 2 of the grievance procedure within fourteen (14) days of when the employee or the Union has first learned or may reasonably have been expected to have learned of the alleged discrimination, unless filed directly at the national level, in

5