```
                   UNITED STATES DISTRICT COURT
                    DISTRICT OF MASSACHUSETTS
```

| | |
|---|---|
| DIANNE DULONG, )<br>　　　　　　　　　　　　　　　)<br>　　Plaintiff, 　　　　　　　　)<br>　　　　　　　　　　　　　　　)<br>　　v. 　　　　　　　　　　　　)<br>　　　　　　　　　　　　　　　)<br>JOHN E. POTTER, POSTMASTER 　)<br>GENERAL, JOSEPH M. FERREIRA, )<br>Individually, AARON TOBEY, 　)<br>JR., Individually and as the )<br>President of the APWU, Local )<br>6005, and the AMERICAN POSTAL )<br>WORKERS UNION AFL-CIO, CAPE 　)<br>COD AREA LOCAL 6005, 　　　　)<br>　　　　　　　　　　　　　　　)<br>　　Defendants. 　　　　　　　)<br>　　　　　　　　　　　　　　　) | C.A. No. 04-12552-NG |

**THE DEFENDANTS'**
**LOCAL RULE 56.1 STATEMENT OF UNDISPUTED FACTS**

　　The defendants, John E. Potter, Postmaster General, Joseph M. Ferreira, Aaron Tobey, Jr., and the American Postal Workers Union AFL-CIO, Cape Cod Area Local 6005 (collectively the "defendants"), submit their Local Rule 56.1 Statement of Undisputed Facts.

　　1.　Dianne Dulong (the "plaintiff") was employed as a Clerk Stenographer with the Post Office, Cape Cod Processing and Distribution Facility ("Facility") starting in October of 1989.  (Exh. 6, Plaintiff's Amended Verified Complaint).

　　2.　In February of 1993, Joseph M. Ferreira ("Ferreira") became the Plant Manager of the Facility.  (Exh. 6).

1

      Ferreira was the direct report supervisor for the plaintiff.  <u>Id.</u>

3. On May 3, 2003, the plaintiff's job as Clerk Stenographer was abolished and reposted as a Mail Processing Clerk position.  (Exh. 8, EEO complaint of Discrimination).

4. On May 12, 2003, the plaintiff filed a complaint with the Equal Employment Office ("EEO") alleging that based on her gender (female), age (58 at the time) and retaliation (prior union grievances and EEO activity) her job was abolished and reposted.  (Exh. 8).

5. On July 15, 2005, the plaintiff filed an Amended Verified Complaint in the U.S. District of Massachusetts seeking damages and equitable relief for harassment and discrimination in employment based on age, gender and retaliation, civil rights violations, claims set forth in her EEOC filing dated May 12, 2003, breach of contract and implied covenant of good faith dealings, wrongful termination and intent.  (Exh. 6).

6. The clerk stenographer position was abolished because it was becoming outdated with the prevailing use of the computer and e-mail as a preferred method of communication.  (Exh. 3, Ferreira Depo. pg. 51, ln. 10-11 and Exh. 5, Joint Job Committee Proposal).

7.  The Clerk Stenographer position was also too restrictive in that it did not provide for mail processing tasks, which were needed due to increase mailing needs.  (Exh. 3, Ferreira Depo. pg. 51, ln. 6-8).  The Mail Processing Clerk position included typing, administrative work, as well as running automative equipment.  (Exh. 4, Mail Processing Clerk PS-05 position description).

8.  Further, the entire Facility was going through a re-organization in order to make it more efficient to avoid being closed.  (Exh. 3, Ferreira Depo., pg. 64, ln. 14-23).

9.  In addition to the plaintiff's job, thirteen other positions were abolished and reposted.  (Exh. 7, Comparative Analysis from EEO Investigative Report).  Of those individuals, six were female, one was older than the plaintiff (who was 58 at the time), four were within 5 years of the plaintiff's age, and an additional six individuals were within 10 years of the plaintiff's age.  Id.

10. None of these individuals were returned to their prior jobs, and they had to bid for new positions with schedule changes.  (Exh. 3, Ferreira Depo. pg. 78, ln 3-10).

11. While it was at Ferreira's discretion to determine which jobs would remain, his decisions were based on operational and efficiency requirements, especially in light of the possible plant closure. (Exh. 3, Ferreira Depo., pg. 67, ln. 22-23).

12. Ferreira stated that the decision to abolish the plaintiff's position "had nothing to do with any previous greivance of EEO activity...I was not irritated by any of those prior complaints filed by her." (Exh. 3, Ferreira Depo., pg. 80, ln. 11-14).

13. Although the plaintiff's position was abolished, she in fact bid for a new position and won the bid for a Mail Processor job. (Exh. 1, Dulong Depo., pg. 31, ln. 19-20. However, the plaintiff did not take the position based on her alleged physical ailments (not the subject matter of this case). Id. at pg. 32, ln. 12-21.

14. The plaintiff alleges she was subject to retaliation due to the her union grievances and EEO filings. The plaintiff filed the following union grievances:

> November 27, 2001: The Complainant was asked to monitor the front door through a surveillance monitor. As a grievance resolution, the monitor was removed.

> December 1, 2001: Ferreira's alleged badgering of the plaintiff caused her to leave the building and the plaintiff was charged AWOL.

> September 25, 2002: The plaintiff alleged that a

4

>member of management was opening and distributing mail before the plaintiff's arrival, taking work away from her.
>
>January 14, 2003: The Plaintiff alleged that a co-worker was allowed to make her own schedule. Monroe was allegedly allowed to play games on her computer for entertainment, the plaintiff was not. Monroe was allowed to use the time clock in her office; the plaintiff was required to go a further distance to use a time clock on the floor. Monroe was allowed to block access to the plaintiff's files, located behind her office. Ferreira tried to force the plaintiff to enter this area despite telling him she did not feel safe.
>
>June 5, 2003: Ferreira allegedly began doing typing previously done by plaintiff; Ferreira had others do typing previously done by plaintiff; Ferreira began transporting work to the plaintiff's desk rather than allowing plaintiff to retrieve it from his desk as previously done; Ferreira was made aware that a member of management was emptying the daily mail pouch before the plaintiff arrived for work, which was her job. Ferreira contacted Providence regarding casual hiring and this was previously done by Plaintiff as part of her job. Ferreira telephoned casuals himself with reporting time information, which previously had been done by the plaintiff as a part of her job.
>
>July 24, 2003: Ferreira and Sawyer met before the plaintiff was called into Ferreira's office to discuss the plaintiff's accommodation request. Ferreira allegedly rushed the plaintiff through the process, completing the form in a sloppy, haphazard, dismissive manner. Ferreira told the plaintiff, "she did not want to work at 4:00 a.m." Ferreira questioned the plaintiff's bid choices. Ferreira's input influenced the RAC committee's decision to deny the plaintiff accommodations.

The plaintiff filed the following EEO complaints:

>September 11, 2000: The plaintiff was awarded a position that required training. In the presence of a supervisor, Ferreira denied the plaintiff

5

    training, which was a contractual guarantee.

    <u>November 28, 2001</u>: Ferreira allegedly harassed the plaintiff over the gate monitoring duties. The plaintiff had submitted a leave slip to Matthew Smolinsky, a 204B acting supervisor. Ferreira charged the plaintiff AWOL.

    <u>May 8, 2003</u>: Ferreira allegedly dried up the plaintiff's work with the intent of abolishing her position. At no time was there any discussion about reduction in workload. Ferreira, with the help of Tobey removed the plaintiff from the administration area.
(Exh. 6., ¶ 37 and ¶ 38)

                            JOHN E. POTTER,
                            POSTMASTER GENERAL, ET. AL.
                            By their attorneys,

                            MICHAEL J. SULLIVAN
                            United States Attorney

                    By:  /s/ Rayford A. Farquhar
                        RAYFORD A. FARQUHAR
                        Assistant U.S. Attorney
                        John J. Moakley U.S. Courthouse
                        1 Courthouse Way, Suite 9200
                        Boston, MA 02109
                        (617) 748-3100

<u>CERTIFICATE OF SERVICE</u>

Suffolk, ss.                    Boston, Massachusetts

    I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on July 31, 2007.

                            /s/ Rayford A. Farquhar
                            RAYFORD A. FARQUHAR
                            Assistant U.S. Attorney