UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

---

DIANNE DULONG )
                Plaintiff, )
 )
vs. ) C.A. No. C.A. No. 1:04-cv-12552- NG
 )
JOHN E. POTTER, POSTMASTER GENERAL )
                Defendant. )

---

## PLAINTIFF, DIANNE DULONG'S, PRETRIAL MEMORANDUM

**(a)**     **Name, address and telephone number of trial counsel**:

Joseph R. Gallitano, Esq., 34 Main Street Ext., Suite 202, Plymouth, MA 02360;

(508) 746-1500.

**(b)**     **A concise summary of the positions asserted by the plaintiff(s), defendant(s) and any other parties with respect to both liability and relief sought.**

**PLAINTIFF'S POSITION**

A brief overview of the Plaintiff's position regarding her action against the United States Postal Service is based upon the treatment she received from her immediate supervisor the Plant Manager, Joseph M. Ferreira. Mr. Ferreira was the person most directly in contact with the Plaintiff and discriminated against her a number of different ways. He discriminated against her on the basis of her age by doing everything possible to engineer the loss of her position in order to hire a younger woman to take her place.

Besides the discrimination against the Plaintiff based on age by the discriminatory behavior by Mr. Ferreira towards the Plaintiff was primarily based upon his retaliation against her for her multiple filings of grievances and EEOC Complaints against him.

Those Complaints while against the Postal Service specifically referenced his behavior, Joseph Ferreira, against the Plaintiff, Dianne DuLong.

Ferreira treated her much different then other employees in the immediate work area. He gave a male employee extended freedom and privileges to come and go at will, to make his schedule at will and in contrast to his constant monitoring of the Plaintiff by exacting from her a very strict schedule, regarding her comings and goings from the office. Ferreira did everything he could to put her into uncomfortable positions, which he knew were going to be difficult for her considering her pre-disposition towards anxiety and stress.

Further, he allowed a hostile relationship to not only exist, but flourish between another female co-worker and the Plaintiff by again favoring the other worker and showing a friendlier attitude towards the other female worker, Ms. Monroe, as opposed to the harsh, reserved and somewhat isolating behavior he exhibited toward the Plaintiff.

Even though Mr. Ferreira admits that as Plant Manager he had the discretion to make a number of concessions and accommodations to allow Dianne DuLong to keep her job, he made no such effort on her behalf, although he had done so for other employees on numerous occasions. Instead, he managed to engineer the process of reorganization, so that it was virtually impossible for her to keep her present position or even any portion of her present position, based on the hours that she was to report for work and the work that she was to do. Therefore, it became perfectly obvious to the Plaintiff that Mr. Ferreira was retaliating against her for the grievances and EEO Complaint she had filed and his retaliating conduct was over a continuous and extended period from the date of

her EEO Complaints up to and including her loss of employment by a constructive wrongful termination.

**(c)    Whether any claims or defense have been or will be waived or otherwise not pursued at trial.**

No.

**(d)    A statement of the facts established by the pleadings, stipulations of counsel and admissions.  Counsel shall stipulate all facts not in genuine dispute.**

1.    Dianne DuLong was employed as a Clerk Stenographer with the Post Office, Cape Cod Processing and Distribution Facility ("Facility") starting in October of 1989.

2.    In February of 1993, Joseph M. Ferreira ("Ferreira") became the Plant Manager of the Facility.  Ferreira was the direct report supervisor for the plaintiff.

3.    On May 3, 2003, the Plaintiff's job as clerk Stenographer was abolished and reposted as a Mail Processing Clerk position.

4.    On May 12, 2003, the plaintiff filed a complaint with the Equal Employment Office ("EEO") alleging that based on her gender (female), age (58 at the time) and retaliation (prior union grievances and EEO activity) her job was abolished and reposted.

5.    On July 15, 2005, the plaintiff filed an Amended Verified Complaint in the U.S. District of Massachusetts seeking damages and equitable relief for harassment and discrimination in employment based on age, gender and retaliation, civil rights violations, claims set forth in her EEOC filing dated May 12, 2003, breach of contract and implied covenant of good faith dealings, and wrongful termination.

6.    The Plaintiff alleges she was subject to retaliation due to her union grievances and EEO filings.  The plaintiff filed the following union grievances:

<u>November 27, 2001</u>: The Complainant was asked to monitor the front door through a surveillance monitor.  As a grievance resolution, the monitor was removed.

<u>December 1, 2001</u>:  Ferreira's alleged badgering of the plaintiff caused her to leave the building and the plaintiff was charged AWOL.

<u>September 25, 2002</u>:  The Plaintiff alleged that a member of management was opening and distributing mail before the Plaintiff's arrival, taking work away from her.

<u>January 14, 2003</u>:  The Plaintiff alleged that a co-worker was allowed to make her own schedule.  Monroe was allegedly allowed to play games on her computer for entertainment, the plaintiff was not.  Monroe was allowed to use the time clock in her office; the plaintiff was required to go a further distance to use a time clock on the floor.  Monroe was allowed to block access to the plaintiff's files, located behind her office.  Ferreira tried to force the Plaintiff to enter this area despite telling him she did not feel safe.

<u>June 5, 2003</u>:  Ferreira allegedly began doing typing previously done by Plaintiff.  Ferreira had others do typing previously done by Plaintiff.  Ferreira began transporting work to the Plaintiff's desk rather than allowing Plaintiff to retrieve it from his desk as previously done.  Ferreira was made aware that a member of management was emptying the daily mail pouch before the plaintiff arrived for work, which was her job.  Ferreira contacted Providence regarding casual hiring and this was previously done by Plaintiff as part of her job.  Ferreira telephoned casuals himself with reporting time information, which previously had been done by the Plaintiff as part of her job.

<u>July 24, 2003</u>:  Ferreira and Sawyer met before the Plaintiff was called into Ferreira's office to discuss the Plaintiff's accommodation request.  Ferreira allegedly rushed the plaintiff through the process, completing the form in a sloppy, haphazard, dismissive manner.  Ferreira told the Plaintiff, "she did not want to work at 4:00 a.m."  Ferreira questioned the plaintiff's bid choices.  Ferreira's input influenced the RAC committee's decision to deny the Plaintiff accommodations.

<u>September 11, 2000</u>:  The Plaintiff was awarded a position that required training.  In the presence of a supervisor, Ferreira denied the Plaintiff training, which was a contractual guarantee.

<u>November 28, 2001</u>:  Ferreira allegedly harassed the Plaintiff over the gate monitoring duties.  The Plaintiff had submitted a leave slip to Matthew Smolinsky, a 204B acting supervisor.  Ferreira charged the Plaintiff AWOL.

<u>May 8, 2003</u>: Ferreira allegedly dried up the Plaintiff's work with the intent of abolishing her position.  At no time was there any discussion about reduction in workload.  Ferreira with the help of Tobey removed the Plaintiff from the administration area.

**7.**     As a result of Ferreira's behavior toward the Plaintiff, the Plaintiff filed the

following Grievances with her Union:

    a.     Grievance:  01-136-Monitor Duties – Date of Step 1:  11/27/01.  The Complainant was forced to act as the security guard for the building (post 9/11).  The monitor was removed, Ferreira angry over the matter and badgered the Plaintiff.

    b.     Grievance:  01-156-AWOL Charge – Date of Step 1:  12/01/01.  Ferreira's badgering of the Plaintiff caused her to leave the building and the Plaintiff was charged AWOL.

    c.     Grievance:  02-44-Management doing Plaintiff's work – Date of Step 1: 9/25/02.  A member of management was opening and distributing mail before the Plaintiff's arrival, taking work away from her.

    d.     Grievance:  03-02-Disparate Treatment – Date of Step 1: 01/14/03.  P. Monroe made her own schedule.  The Plaintiff was not allowed to do the same.  Ferreira went so far as to backdate Monroe's forms to make them appear as if they were submitted on time.  Monroe was allowed games on her computer for entertainment, the Plaintiff was not.  Monroe was allowed to use the time clock in her office; the Plaintiff was required to go to the floor.  Monroe appeared to have two time cards.  Monroe was allowed to block access to the Plaintiff's files, located behind her office.  Ferreira tried to force the Plaintiff to enter this area despite her telling him she did not feel safe.  Documented that Monroe has a volatile temper.

    e.     Grievance:  03-19 – Management doing Plaintiff's work-Date of Step 1: 06/05/03.  Ferreira began doing typing previously done by Plaintiff; Ferreira had others do typing previously done by Plaintiff; Ferreira began transporting work to the Plaintiff's desk rather than allowing Plaintiff to retrieve it from his desk as previously done; Ferreira was made aware that a member of management was emptying the daily mail pouch before the Plaintiff arrived for work.  This was her job.  Ferreira contacted Providence regarding casual hiring.  This was previously done by Plaintiff as part of her job.  Ferreira telephoned casuals himself with reporting time information, which previously had been done by the Plaintiff as part of her job.

    f.     Grievance:  03-23-Denied Reasonable Accommodations-Date of Step 1: 07/24/03.  Ferreira and Sawyer met before the Plaintiff was called into Ferreira's office to discuss Plaintiff's accommodation request.  Ferreira rushed the Plaintiff through the process, completing the form in a sloppy, haphazard, dismissive manner.  Ferreira told the Plaintiff, "She did not want to work at 4:00 a.m."  Ferreira questioned the Plaintiff's bid choices.

Ferriera's input influenced the RAC committee's decision to deny the Plaintiff accommodation.

8.    As a result of the Defendant's behavior toward the Plaintiff, the Plaintiff filed the

following Complaints with the EEOC:

a.    EEO Complaint: 1B0290001-01- training denied - filed 9/11/00.  The Plaintiff was awarded a position that required training.  In the presence of a supervisor, Ferreira denied the Plaintiff the training, which was a contractual guarantee.

b.    EEO Complaint: 1B0290004-02 – charged AWOL – filed 11/28/01. Ferriera harassed the Plaintiff over the gate monitoring duties to the point where she left the building in tears.  Despite the fact that the Plaintiff submitted a leave slip to Matthew Smolinsky, a 204B (acting supervisor with authority of a real supervisor), Ferriera chose to charge the Plaintiff AWOL instead of another form of approved leave.

c.    EEO Complaint:  1B0290039-03 - Job Loss – filed 5/8/03.  Ferriera dried up the Plaintiff's work with the intent of abolishing her position.  At no time was there any discussion about reduction in workload.  Ferriera, with the help of Tobey removed the Plaintiff from the administration area. Tobey did nothing to correct the hostile environment created by Ferreira.

**(e)    Contested issues of fact.**

1.    The Plaintiff was wrongfully terminated on June 9, 2003, as the

culmination of a three year course of harassment and retaliation by Ferreira, the Wareham

Postal Facility Plant Manager.

2.    The Plaintiff filed grievances as set forth in paragraph 32 of her Affidavit

and EEOC complaint as set forth in Paragraph 33 of her Affidavit all of them against

Ferreira.

3.    Ferreira intentionally with purpose to intentionally discriminate against the

Plaintiff based upon gender, instituted a pattern of behavior from 2000-2003 of treating

the Plaintiff in a disparative and discriminatory fashion as opposed to her male co-worker

in the same office area, James Chapman.

4.      As set forth in Plaintiff's Complaint and her Affidavit, Ferreira systematically reduced Plaintiff's work load, and under the pretext of plant reorganization abolished her position, but gave her former duties as part of a new job position to a younger woman; who was more then 10 years younger than the Plaintiff..

5.      Ferreira engineered the restructuring of the job abolishment to insure a younger woman who had union seniority would prevent Plaintiff from keeping the job she had.

6.      Even though joint management union jobs committee recommended Plaintiff's position remain virtually the same, Ferreira on his own authority abolished the position as retaliation for Plaintiff filing EEOC Complaints.

7.      Because of her union activity Ferreira treated the Plaintiff differently from all other employees similarly situated.

8.      The retaliation was intertwined with intentional discrimination and abusive treatment by Ferreira, who was prone to such conduct and had demonstrated such behavior in the past.

9.      As set forth in her Complaint, the Plaintiff tried all the administrative avenues available to her to protect herself and her job, having exhausted all administrative remedies.  She transferred her claim to the Federal Court as was her right. The Plaintiff at trial will show that the treatment she received was as a result of her opposing the Plant Manager and filing grievances and EEOC complaints against Ferreira, who was not only the Plant Manager, but her supervisor.  As such he had to directly deal with any of her grievances while anyone else in the Plant, not directly under his supervision, had their grievances handled by their supervisor.

10.     The Plaintiff alleges and testimony of other employees support the claim that Ferreira resented having to deal with her grievances and implemented retaliatory treatment of her including intentionally arranging her job to go to a younger woman, allowing substantially more freedom in the work place to her male co-worker in her office, than to her, and creating a hostile environment around her by overtly discriminating and retaliating against her.

11.     During the reorganization of the Wareham Plant, other employees were accommodated, but not the Plaintiff.  Plaintiff was the only one not allowed to continue her employment.

12.     Defendants didn't make the same effort to accommodate the Plaintiff or even check as to what work she could do.

13.     Even though Mr. Cleary, Assistant Plant Manager was in charge, Ferreira was still in communication with the plant management at the Wareham facility and had control of operations.

14.     Ferreira was abusive towards the Plaintiff.  He treated other employees better and different than the Plaintiff.

15.     Ferreira set Plaintiff up to fail as retaliation.

16.     Ferreira was upset with the Plaintiff due to filing grievances against him.

17.     Ferreira didn't like her filing grievances.

18.     Ferreira had a criminal record for drug abuse and signs of an abusive personality.  Ferreira was charged with rape.

19.     Ferreira's retaliation against DuLong was not based upon his dislike of DuLong or because he considered her a bad employee; he liked her, was friendly to her,

and thought she was a good employee and performed well, but resented EEO Complaints filed against him.

20.    Ferreira had ultimate authority in regards to DuLong's position and abolishing her job; he could have made accommodations recommended by the job committee if he wanted.

21.    Ferreira took work away from DuLong to build a case to abolish her job.

22.    Ferreira purposely allowed a hostile work environment in retaliation for DuLong filing EEO Complaints specifically against Ferreira.

23.    Ferreira charged DuLong with AWOL charges as retaliation and EEO decision cleared DuLong.

24.    Ferreira intentionally discriminated against DuLong based on age, as retaliation and harassment of DuLong.

25.    Ferreira routinely displayed a rude and abusive behavior towards the Plaintiff from 2000 through 2002.

26.    Ferreira threatened DuLong with abolishing her job.

27.    Ferreira changed the accommodation recommended by the Jobs Committee, which would have kept DuLong employed in a position similar to her clerk position, but Ferreira changed it to abolish DuLong's position.

28.    Even though the Jobs Committee substantiated her position, Ferreira did away with it as part of discriminating and retaliating against DuLong.

29.    Ferreira reported false incident of AWOL against DuLong as part of his ongoing harassing retaliation against her.

30.     Ferreira had long pattern of retaliation against DuLong as result of her EEO Complaints, especially the AWOL incident.

31.     Ferreira had a longstanding pattern of abusive and retaliatory behavior towards employees he supervised.

32.     Ferreira had previously threatened and was abusive to employees who complained about him in grievances and EEO Complaints.  Ferreira was prone to retaliate against any employee who opposes him.

33.     Ferreira encouraged and fostered abusive environment around DuLong as ongoing harassment.

34.     DuLong was treated differently than standard treatment for other employees by not making accommodations for her to keep her job.

35.     Ferreira was prone to vindictive behavior towards an employee with whom he had a problem.

36.     Ferreira could have made an accommodation for DuLong considering her health issues plus time of service, but intentionally chose not to accommodate her as he had for others.

37.     Ferreira tried to give DuLong responsibility for monitoring security for the entrance to the plant, which was not part of her job description.  Aaron Tobey, filed a grievance as DuLong's Union Representative and the Union prevailed.

38.     Ferreira treated DuLong differently by charging her AWOL when she followed procedure to leave the plant building.  First time Union President Tobey ever heard of an employee being charged with AWOL by Ferreira.

39.    DuLong's job was reposted because of starting time changes from 7:00 or 8:00 a.m. to 4:00 a.m.; the change exceeded two hours, requiring reposting, which resulted in DuLong's job going to a younger woman who happened to have a couple of years seniority over DuLong, but was over 10 years younger than DuLong.

**(f)    Any jurisdictional questions.**

None.

**(g)    Any questions raised by pending motions.**

None.

**(h)    Issues of law, including evidentiary questions, together with supporting authority.  (Any party wishing to present a matter to the court by way of a motion in limine shall file such motion as a separate document at the time of the filing of the pretrial memorandum).**

The only issues of law concerning violations of Title VII, 42 U.S.C.2000 (e) for discrimination.

**(i)    Any requested amendments to the pleadings.**

None.

**(j)    Any additional matter to aid in the disposition of the action.**

None.

**(k)    The probable length of trial (court's customary trial day is from 9:00 a.m. to 1:00 p.m. with a break of about 25 minutes at 11:00 a.m.).**

5 days.

**(l)    A list of the names and addresses of witnesses who will testify at trial and the purpose of the testimony of each witness, i.e., whether factual, medical, or other**

**expert, etc.  Unless the qualifications of any medical or other expert are admitted, a brief statement of the qualifications of such witness shall be included.**

1.    Plaintiff, Dianne DuLong.

2.    Lorraine L. Sawyer, APWU Secretary, will testify to her knowledge of the events, which occurred in the Plaintiff's Amended Verified Complaint.

3.    James Chapman, Jr., Clerk, will testify to his knowledge of the events, which occurred in the Plaintiff's Amended Verified Complaint.

4.    Anne Bernacchio, Clerk, will testify to her knowledge of the events, which occurred in the Plaintiff's Amended Verified Complaint.

5.    Mark Dunay, LISW, counseling for anxiety, stress, and depression related to work situation.

6.    Joseph Cleary, Assistant Plant Manager.

7.    Stephen DuLong, Plaintiff's Husband will testify as to lost wages.

The Plaintiff serves the right to supplement the list of witnesses with due notice to the Defendant.

**(m)    A list of the proposed exhibits each party will offer in that party's affirmative case.  Those exhibits to be introduced without objection shall be identified by a single sequence of numbers, regardless of which party is the proponent of a given exhibit.  Those exhibits to which any party objects shall be identified by a single sequence of capital letters followed by some form of identification of the objecting party (e.g., "Plaintiff Jones objects; Defendant Smith objects").**

1.    Treatment letters from Dr. Dunay, whom Plaintiff consulted for anxiety, stress, and depression related to work situation.

2.      Treatment reports from Dr. James Wargovich, the Plaintiff's treating physician.

Plaintiff reserves the right to supplement list of exhibits prior to trial date with due notice

to the Defendant.

3.      Exhibit 1 to Deposition of Lorraine L. Sawyer-Statement from Lorraine L.

Sawyer to Whom it May Concern, concerning Dianne DuLong;

4.      Exhibit 2 to Deposition of Lorraine L. Sawyer-Affidavit of Lorraine L. Sawyer;

5.      Exhibit 3 to Deposition of Lorraine L. Sawyer-EEOC Complaint of

Discrimination in the Postal Service, Case No. 1B-029-0039-03, dated received by the

EEOC Office on May 13, 2003.

6.      Exhibit 1 to Deposition of James H. Chapman, Jr.-Affidavit of James H.

Chapman, Jr.

7.      Exhibit 2 to Deposition of James H. Chapman, Jr.-Letter to Dianne DuLong from

James H. Chapman, Jr.

8.      Exhibit 3 to Deposition of James H. Chapman, Jr.-Letter from James H.

Chapman, dated December 28, 2001 to Joseph Ferreira with attachments re:  EEO-1B-

029-0004-02.

9.      Exhibit 4 to Deposition of James H. Chapman, Jr.-Letter from James H.

Chapman, Jr. to Joseph Ferreira dated December 7, 2000.

10.     Exhibit 5 to Deposition of James H. Chapman, Jr.-Letter from James H.

Chapman, Jr. to Aaron Tobey dated December 4, 2001.

11.     Exhibit 6 to Deposition of James H. Chapman, Jr.-Letter from James H.

Chapman, Jr. to John Yanuskiewicz, APWU Steward.

12.     Appendix A-Breakdown of Lost Income and Retirement Benefits.

13.     Job description of Clerk/Stenographer held by the Plaintiff.

14.     Job description of job Plaintiff bid for, but was given to Lorraine Sawyer.

15.     EEO Complaint No. 1B029000-01.

16.     EEO Complaint No. 1B0290004-02

**(n)     In jury cases, an appendix containing proposed findings of fact and rulings of law.  Each proposed jury instruction or conclusion of law shall include citations to supporting authority.**

See Jury Instructions and Special Verdict Forms attached hereto as Exhibit A.

**(o)     In jury cases, any questions proposed for the <u>voir</u> <u>dire</u> examination of the jury panel and any proposed interrogatories to the jury or special verdict from.**

Punitive damages.

<u>**THE PLAINTIFF RESERVES THE RIGHT TO AMEND AND SUPPLEMENT THE PRE-TRIAL MEMO BEFORE COMMENCEMENT OF TRIAL**</u>

Respectfully submitted,
Plaintiff, Dianne DuLong
By her attorney

*/s/Joseph R. Gallitano*
Attorney Joseph R. Gallitano
BBO # 183700
34 Main St. Ext., Suite 202
Plymouth, MA  02360
(508) 746-1500

*/s/ Richard D. Armstrong Jr.*
Richard D. Armstrong, Jr., Esq.
BBO # 021580
1400 Hancock Street
3rd Floor
Quincy, MA  02169
(617) 471-4400

Dated:  December 4, 2007

# EXHIBIT A

NITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DIANNE DULONG | ) |
|           Plaintiff, | ) |
| | ) |
| vs. | ) C.A. No. C.A. No. 1:04-cv-12552- NG |
| | ) |
| JOHN E. POTTER, POSTMASTER GENERAL | ) |
|           Defendant. | ) |

### PLAINTIFF'S JURY INSTRUCTIONS AND PROPOSED SPECIAL VERDICT JURY FORM

The Plaintiff, Dianne DuLong (hereinafter "DuLong") hereby submits her Proposed Jury Instructions.

### INTRODUCTION

Title VII and 42 U.S.C. 2000 (e), makes it unlawful for an employer, or its agents, to refuse to hire or promote, or to discharge or discriminate in compensation, terms, conditions, or privileges of employment based on a person's age, color, handicap, national origin, race, religion, sex, or sexual orientation.

The Plaintiff claims that the Defendant terminated her employment, not for legitimate business reasons, but because of the Plaintiff's age and as retaliation for filing EEOC Complaints against her supervisor.

### NO. 1

The Plaintiff was an employee of the United States Postal Service (hereinafter "USPS") from 1987 to June 9, 2003, before she was terminated. The Plaintiff argues that from September 11, 2000, she was harassed and discriminated against by Ferreira because of her filing EEO Complaints against him. She also claims that she was eventually terminated for the same reason.

In order to recover on a claim of discrimination, the Plaintiff must prove by a preponderance of the evidence that by virtue of her age she was a member of a protected class by her age and she would not have been terminated. 42 U.S.C. 2000 (e) and 42 U.S.C. Sections 621-634.

## NO. 2

Plaintiff must prove that is was more likely than not that the Defendant's stated reasons for terminating her were a pretext. See Lehman v. Prudential Ins. Co. of America, 74 F.3d 323, 327 (1st Cir. 1996). You may find for the Plaintiff if you determine discrimination as the basis of Defendant's termination of Plaintiff's employment and if you reject the Defendant's nondiscriminatory explanation for the adverse employment action and believe said explanation to be a pretext. Reeves v. Sanderson Plumbing Prods, Inc., 530 U.S. 133, 120 S.Ct. 2097 (2000). See Abrahim v. President & Fellow of Harvard College 432 Mass. 107, 731 N.E.2d 1075 (2000).


## NO. 3

The fact finder merely has to determine whether age was a determinative influence on the Defendant's decision to terminate her, even if other factors exist. Ralph Williams, Plaintiff, Appellant v. Raytheon Company, Defendant, Appellee, 220 F. 3d 16; 2000 U.S. App. Lexis 17549.

## NO. 4

If you find that the age difference between the person who was hired for a position, which the Plaintiff applied for also were:

    a.      More then 5 years younger than the Plaintiff;

b.    That the reasons given by the employee were a pretext to conceal its discriminatory action of intentionally selecting a younger person than the Plaintiff based on her age.

## NO. 5

You may find for the Plaintiff under instructions 1, 2 and 3, in that there was discrimination as the basis of Defendant's termination of Plaintiff's employment and if you reject the Defendant's nondiscriminatory explanation for the adverse employment action and believe said explanation to be a pretext.  Reeves v. Sanderson Plumbing Prods, Inc., 530 U.S. 133, 120 S. Ct. 2097 (2000).  See Abrahim v. President & Fellow of Harvard College, 432 Mass. 107, 731, N.E.2d 1075 (2000).

## NO. 6

You may find for the Plaintiff, if you find the Plaintiff by filing EEO Complaints was engaged in a protected activity and that the Defendants retaliated against the Plaintiff for said protected activity by the Plaintiff in filing complaints against her supervisor Ferreira.  Ralph Williams, Plaintiff, Appellant v. Raytheon Company, Defendant, Appellee, 220 F. 3d 16; 2000 U.S. App. Lexis 17549.

## NO. 7

You may find for the Plaintiff if you find that the retaliation was continual even if over a three to four year period.

a.    The protected activity the filing of three EEO Complaints after filing numerous grievances took place over aforesaid extended period of time.  Ralph Williams, Plaintiff, Appellant v. Raytheon Company, Defendant, Appellee, 220 F. 3d 16; 2000 U.S. App. Lexis 17549.

## NO. 8

If you find for the Plaintiff that she experienced retaliation continuing over an extended period of time even after filing EEO Complaints resulting in her loss of employment.  If you find that:

      a.      both actions and inactions involving treatment of the Plaintiff were meant to harass.

      b.      Her supervisor demonstrated differential treatment towards her in the workplace, dissimilar to employees similarly situated.

      c.      Comments made by her supervisor by others in reference to her supervisor, Ferreira, which would intimate a retaliatory mind set.  Anthony Sibilia, Plaintiff v. John Snow, Secretary of the Department of the Treasury, Defendant, 2006 U.S. Dist. Lexis 76409, October 20, 2006.

## NO. 9

Statements made by decision makers can be evidence of discrimination.  Rodriquez v. Ponte, Inc., 98 F.3d 670, 676 (1st. Cir. 1996).

## NO. 10

Statements made by non-decision makes can be evidence that a discriminatory atmosphere pervades the workplace and infects the company's personnel decisions.  Conway v. Electro Switch Corp., 835 F.2d 593, 600 (1st Cir. 1987).

## NO. 11

Factors that should be considered when awarding emotional distress damages are: (1) the nature and character of the alleged harm; (2) the severity of the harm; (3) the length of time the complainant has suffered and reasonably expects to suffer; and (4) whether the complainant has attempted to mitigate the harm (e.g. by counseling). Stonehill College v. Massachusetts Commission Against Discrimination, 441 Mass. 549, 576 (2004).

## NO. 12

Each emotional distress award should be case specific and should not be determined by formula or by precise reference points. Evidence of some physical manifestation of the emotional distress would be beneficial. Stonehill College v. Massachusetts Commission Against Discrimination, 441 Mass. 549, 576 (2004).

Respectfully submitted,

Dianne DuLong
By her Attorneys

/s/ Joseph R. Gallitano

Joseph R. Gallitano
Gallitano & Associates
34 Main Street Ext. Suite 202
Plymouth, MA  02360
(508) 746-1500
BBO # 183700

Richard D. Armstrong, Jr.
Richard D. Armstrong, Jr., Esq.
BBO # 021580
1400 Hancock Street
3rd Floor
Quincy, MA  02169
(617) 471-4400

Dated:  December 4, 2007

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

DIANNE DULONG )
               Plaintiff, )
                             )
vs. ) C.A. No. C.A. No. 1:04-cv-12552- NG
                             )
JOHN E. POTTER, POSTMASTER GENERAL )
               Defendant. )

## SPECIAL VERDICT OF JURY

**I.**     **Retaliation Claim-Termination of Employment Claim**

1.     Did the Defendant, through its agents or employees, retaliate against the Plaintiff on the basis of her filing EEOC complaints against her supervisor and John E. Potter, Postmaster General of the United States Postal Service while in Defendant's employ?

               Yes _____         No_____

*If you have answered Question 1 "Yes," go to Question 2. If you have answered Question 1 "No," go to Question 4.*

2.     Did the Plaintiff suffer harm as a result of such retaliation?

               Yes _____         No_____

3.     If the answer to Question 2 is "Yes," what is the amount of money that will fairly and reasonably compensate the Plaintiff for the economic loss he has suffered?

               _____ (numbers)

               _____ (words)

4.     Did the Defendant, through its agents or employees, retaliate against the Plaintiff on the basis of her filing EEOC complaints against her supervisor and John E. Potter, Postmaster General of the United States Postal Service while in Defendant's employ by terminating her employment?

               Yes _____         No_____

*If you have answered Question 4 "Yes," go to Question 5.*

5.   Did the Plaintiff suffer harm as a result of such retaliation?

Yes _____         No_____

6.   If your answer to Question 5 is "Yes," what is the amount of damages that will fairly compensate the Plaintiff for her economic losses?

*Back Pay:*

_____ (numbers)

_____(words)

*Future or Front Pay:*

_____ (numbers)

_____(words)

7.   What amount of money will fairly and adequately compensate the Plaintiff for her emotional distress, if any, caused by the Defendant's actions?

_____ (numbers)

_____(words)

8.   What amount of money will fairly and adequately compensate the Plaintiff for financial damages, if any, caused by the Defendant's actions?

_____ (numbers)

_____(words)

*Punitive Damages*

9.   Was the conduct of the Defendant, in retaliating against the Plaintiff, outrageous and a result of the Defendant's evil motive or reckless indifference to the rights of others, such that the conduct warrants condemnation and deterrence and the imposition of Punitive Damages?

Yes _____         No_____

10. If you answer to Question 9 is "Yes," what amount of punitive damages should be imposed against John E. Potter, Postmaster General, United States Postal Service?

_____ (numbers)

_____(words)

_____
Date

_____
Foreperson

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

DIANNE DULONG )
                Plaintiff, )
                 )
vs. ) C.A. No. C.A. No. 1:04-cv-12552- NG
                 )
JOHN E. POTTER, POSTMASTER GENERAL )
                Defendant. )

**SPECIAL VERDICT OF JURY**

**I.**    **Discrimination Claim**

    1.    Did the Defendant, through its agents or employees, discriminate against the Plaintiff on the basis of her age while in Defendant's employ, by employing a person younger than the Plaintiff to do her job?

            Yes _____    No_____

*If you have answered Question 1 "Yes," go to Question 2.  If you have answered Question 1 "No," go to Question 4.*

    2.    Did the Plaintiff suffer harm as a result of such discrimination?

            Yes _____    No_____

    3.    If the answer to Question 2 is "Yes," what is the amount of money that will fairly and reasonably compensate the Plaintiff for the economic loss she has suffered?

            _____ (numbers)

            _____ (words)

**II.**    **Termination of Employment Claim**

    4.    Did the Defendant, through its agents or employees, discriminate against the Plaintiff on the basis of her age when it terminated her employment, by refusing to make any accommodations that would allow her to continue in her employment?

            Yes _____    No_____

*If you have answered Question 4 "Yes," go to Question 5.*

5.   Did the Plaintiff suffer harm as a result of such discrimination?

Yes _____        No_____

6.   If your answer to Question 5 is "Yes," what is the amount of damages that will fairly compensate the Plaintiff for her economic losses?

*Back Pay:*

_____ (numbers)

_____(words)

*Future or Front Pay:*

_____ (numbers)

_____(words)

7.   What amount of money will fairly and adequately compensate the Plaintiff for her emotional distress, if any, caused by the Defendant's actions?

_____ (numbers)

_____(words)

8.   What amount of money will fairly and adequately compensate the Plaintiff for financial damages, if any, caused by the Defendant's actions?

_____ (numbers)

_____(words)

*Punitive Damages*

9.   Was the conduct of the Defendant, in discriminating against the Plaintiff, outrageous and a result of the Defendant's evil motive or reckless indifference to the rights of others, such that the conduct warrants condemnation and deterrence and the imposition of Punitive Damages?

Yes _____        No_____

10.    If you answer to Question 9 is "Yes," what amount of punitive damages should be imposed against John E. Potter, Postmaster General, United States Postal Service?

_____ (numbers)

_____(words)


_____          _____
Date                                               Foreperson